UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KLA-TENCOR CORPORATION,<br>a Delaware corporation,<br><br>                    Plaintiff,<br><br>       v.<br><br>BRIAN MURPHY, RENWICK<br>THOMPSON, PETER HOOPER, RUIXIA<br>CHEN, and INSPECSTAR, LLC, a<br>California limited liability company,<br><br>                    Defendants. | Case No. C 09-01922 RMW<br><br>**PRELIMINARY<br>INJUNCTION AGAINST ALL<br>DEFENDANTS** |

   Plaintiff KLA-Tencor Corporation ("KT") filed an *ex parte* motion for temporary restraining order and order to show cause on May 4, 2009.  This Court on May 4, 2009, at 6:30 p.m. issued its order granting a restraining order, allowing for expedited discovery and also granting KT's request to secure certain electronic evidence (hereinafter "TRO").  The TRO required the defendants to show cause on May 14, 2009, why a preliminary injunction should not be entered against them.  The parties thereafter stipulated to an extension of the TRO and continuance of the hearing to May 22, 2009.

   This matter came on for hearing on May 22, 2009, and all parties were represented by counsel.  Having read the papers filed by the parties in support of and in opposition to the Order to Show Cause and Preliminary Injunction, and having heard the arguments of counsel, the Court

1  hereby grants KT's request for a preliminary injunction as provided in this Order. KT's motion
2  and supporting declarations, including the declarations submitted in reply, support a finding that
3  irreparable harm is possible, given the sensitivity and value to KT of the information it seeks to
4  enjoin defendants' use and disclosure of.

8  Accordingly, the Court orders as follows:

9  1. IT IS HEREBY ORDERED that Brian Murphy ("MURPHY"), Renwick
10 Thompson ("THOMPSON"), Peter Hooper ("HOOPER"), Ruixia Chen ("CHEN"), and
11 InspecStar, LLC ("INSPECSTAR") (collectively "DEFENDANTS"), together with their agents,
12 servants, directors, officers, principals, employees, representatives, assigns, and those acting in
13 concert with DEFENDANTS, are hereby restrained and enjoined from engaging in, committing,
14 or performing, directly or indirectly, any of the following acts:

15  (a) Acquiring, disclosing, using or transferring any KLA-Tencor Corporation
16 ("KT") trade secret or confidential material or information consisting of
17 KT product architecture documents, including schematics and other drawings; KT
18 fabrication and production documents; KT financial information; KT service manuals, procedures
19 and checklists; KT system test documentation and procedures; KT software and software
20 passwords; KT customer information and records, including contracts between KT and its
21 customers; KT tool warranties; KT tool service and maintenance history files and information;
22 KT pricing information for its products and services; KT records specifying which KT tools have
23 been sold to which customers and associated records reflecting tool installation, repair and
24 maintenance, and/or KT employee training documents, information and online course materials;
25 KT tools used in the installation, maintenance and upgrading of KT systems; and KT
26 documentation and information regarding parts for its systems; information, technical data and
27 know-how relating to KT products and prototypes, KT business and product plans, KT
28 manufacturing processes, KT research and development programs, KT product specifications and

1  designs, KT algorithms, KT computer hardware configurations, KT test data; KT strategic plans;
2  KT vendors, including terms of agreements with vendors; KT employment records, and employee
3  performance and evaluation information; materials and things provided to third parties by KT
4  pursuant to contracts limiting their further distribution or dissemination without KT's permission;
5  and information given to KT by other companies pursuant to
6  confidentiality agreements, all of the above whether in electronic, hard-copy, or other form, by
7  directly or indirectly (1) making any copies, whether electronically or by any other means;
8  (2) communicating or providing such documents, information or things to any other Defendant in
9  this action or to any third party; (3) transferring such documents or information to any other
10 storage media, computer, server, facility, or other tangible or intangible thing where such
11 information might be stored; (4) transferring such documents, information or things (including
12 electronic storage devices or media with such documents or information) to any location,
13 including any location out of the country, whether by electronic means or any other means;
14 (5) selling or licensing such information to any third party; (6) providing any product or service to
15 any third party that incorporates or requires use of such information; (7) offering to provide to
16 any third party any product or service that incorporates or requires use of such information; or
17 (8) using such information for research or development, or for any other commercial purposes;
18        (b)    Contacting, soliciting or hiring any current or former employee of KT for
19 the purpose of obtaining, directly or indirectly, any KT trade secret or confidential
20 materials or information consisting of KT product architecture documents,
21 including schematics and other drawings; KT fabrication and production documents; KT financial
22 information; KT service manuals, procedures and checklists; KT system test documentation and
23 procedures; KT software and software passwords; KT customer information and records,
24 including contracts between KT and its customers; KT tool warranties; KT tool service and
25 maintenance history files and information; KT pricing information for its products and services;
26 KT records specifying which KT tools have been sold to which customers and associated records
27 reflecting tool installation, repair and maintenance, and/or KT employee training documents,
28 information and online course materials; KT tools used in the installation,

1   maintenance and upgrading of KT systems; and KT documentation and information regarding
2   parts for its systems; information, technical data and know-how relating to KT products and
3   prototypes, KT business and product plans, KT manufacturing processes, KT research and
4   development programs, KT product specifications and designs, KT algorithms, KT computer
5   hardware configurations, KT test data; KT strategic plans; KT vendors, including terms of
6   agreements with vendors; KT employment records, and employee performance and evaluation
7   information; materials and things provided to third parties by KT pursuant to contracts limiting
8   their further distribution or dissemination without KT's permission;                              and
9           information given to KT by other companies pursuant to confidentiality agreements,
10  all of the above whether in electronic, hard-copy, or other form;

11          (c)     Destroying, deleting, removing, altering, modifying, writing over,
12  concealing, or disposing of any documents, writings or information of any kind that were
13  obtained from KT or constitute, refer to, reflect, concern, or were derived from any KT trade
14  secret or confidential           material or information consisting of            KT
15  product architecture documents, including schematics and other drawings; KT fabrication and
16  production documents; KT financial information; KT service manuals, procedures and checklists;
17  KT system test documentation and procedures; KT software and software passwords; KT
18  customer information and records, including contracts between KT and its customers; KT tool
19  warranties; KT tool service and maintenance history files and information; KT pricing
20  information for its products and services; KT records specifying which KT tools have been sold
21  to which customers and associated records reflecting tool installation, repair and maintenance,
22  and/or KT employee training documents, information and online course materials; KT
23  tools used in the installation, maintenance and upgrading of KT systems; and KT documentation
24  and information regarding parts for its systems; information, technical data and know-how
25  relating to KT products and prototypes, KT business and product plans, KT manufacturing
26  processes, KT research and development programs, KT product specifications and designs, KT
27  algorithms, KT computer hardware configurations, KT test data; KT strategic plans; KT vendors,
28  including terms of agreements with vendors; KT employment records, and employee performance

1   and evaluation information; materials and things provided to third parties by KT pursuant to

2   contracts limiting their further distribution or dissemination without KT's permission;

3                   and              information given to KT by other companies pursuant to

4   confidentiality agreements, all of the above whether in electronic, hard-copy, or other form, by

5   directly or indirectly; and

6           (d)     Destroying, deleting, removing, altering, modifying, writing over,

7   concealing, or disposing of any portable or non-portable hard drives, disks, CDs, DVDs, or other

8   storage media on which computer files might be stored (collectively "Electronic Storage

9   Devices") in the possession, custody, or control of any of DEFENDANTS or in the possession,

10  custody, or control of any person or entity acting in concert with any of DEFENDANTS,

11  <u>regardless</u> of whether said Electronic Storage Devices are believed or not believed to contain

12  information that was obtained from KT or constitutes, refers to, reflects, concerns, or was derived

13  from any KT trade secret or confidential                 material or information, consisting of

14              KT product architecture documents, including schematics and other drawings; KT

15  fabrication and production documents; KT financial information; KT service manuals, procedures

16  and checklists; KT system test documentation and procedures; KT software and software

17  passwords; KT customer information and records, including contracts between KT and its

18  customers; KT tool warranties; KT tool service and maintenance history files and information;

19  KT pricing information for its products and services; KT records specifying which KT tools have

20  been sold to which customers and associated records reflecting tool installation, repair and

21  maintenance, and/or KT employee training documents, information and online course materials;

22  KT          tools used in the installation, maintenance and upgrading of KT systems; and KT

23  documentation and information regarding parts for its systems; information, technical data and

24  know-how relating to KT products and prototypes, KT business and product plans, KT

25  manufacturing processes, KT research and development programs, KT product specifications and

26  designs, KT algorithms, KT computer hardware configurations, KT test data; KT strategic plans;

27  KT vendors, including terms of agreements with vendors; KT employment records, and employee

28  performance and evaluation information; materials and things provided to third parties by KT

1  pursuant to contracts limiting their further distribution or dissemination without KT's permission;
2  and information given to KT by other companies pursuant to
3  confidentiality agreements, all of the above whether in electronic, hard-copy, or other form, by
4  directly or indirectly.

5  (e) Destroying, deleting, removing, altering, modifying, writing over,
6  concealing, or disposing of any e-mails, including but not limited to e-mails residing in "sent,"
7  "received," or "trash" folders, and any associated e-mail data, including but not limited to META
8  data, from any e-mail accounts, including but not limited to web-based e-mail accounts, such as
9  Hotmail, Netscape, Comcast, Yahoo or Gmail accounts (collectively "E-Mails") maintained by or
10 accessible to any of DEFENDANTS or any person or entity acting in concert with any of
11 DEFENDANTS, regardless of whether said E-Mails are believed or not believed to contain
12 information that was obtained from KT or constitutes, refers to, reflects, concerns, or was derived
13 from any KT trade secret or confidential material or information, `consisting`
14 `of` KT product architecture files, KT fabrication and production files, KT financial
15 files, KT service manuals, KT software and software passwords, KT customer files, contracts
16 between KT and its customers, KT tool warranties, KT tool service and maintenance history files,
17 KT pricing information for its products and services, KT records specifying which KT tools have
18 been sold to which customers and associated records reflecting tool installation, repair and
19 maintenance, and/or KT employee training documents, information and online course materials;
20 information, technical data and know-how relating to KT products and prototypes, KT business
21 and product plans, KT manufacturing processes, KT research and development programs, KT
22 product specifications and designs, KT algorithms, KT computer hardware configurations, KT
23 test data; KT strategic plans; KT vendors, including terms of agreements with vendors; KT
24 employment records, and employee performance and evaluation information; materials and things
25 provided to third parties by KT pursuant to contracts limiting their further distribution or
26 dissemination without KT's permission; and information
27 given to KT by other companies pursuant to confidentiality agreements, all of the above whether
28 in electronic, hard-copy, or other form, by directly or indirectly.

2. For purposes of this Order, (1) the term "trade secret" shall have the meaning provided in California Civil Code Section 3426.1(d) and relevant case law; and (2) the term "confidential" shall include trade secret materials and information, as well as the following: materials marked by KT as CONFIDENTIAL; non-public KT materials and information maintained as confidential by KT;

information given to KT by individuals or other companies pursuant to confidentiality agreements; materials and information provided under circumstances showing that KT intended them only for limited distribution or disclosure; KT materials and information maintained as confidential by KT which, if disclosed, could potentially be prejudicial to KT, its customers or its investors, or harm KT's competitive position.

3. The restrictions in paragraph 1(a) and 1(b) shall not apply to materials or information that the defendant can document (i) was independently developed without unauthorized use of KT trade secret or confidential information or materials; (ii) was publicly disclosed by KT; (iii) was lawfully disclosed by a third party having no obligation of confidentiality, or (iv) otherwise entered the public domain through no improper action or inaction by the defendant (or any affiliate, agent, consultant or employee of the defendant). Defendants may seek and obtain employment from any former, current or prospective customer or competitor of KT, so long as those actions are consistent with the express terms of this order.

4. In accordance with Federal Rule of Civil Procedure 65(c), KT shall maintain the existing security bond in the amount of $100,000 to pay the costs, if any, sustained by any party found to have been wrongfully enjoined.

IT IS SO ORDERED.

Dated: _____June 5_____, 2009

_Ronald M. Whyte_
The Honorable Judge Ronald M. Whyte
Judge of the United States District Court,
Northern District of California