*E-FILED - 12/23/09*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KLA-TENCOR CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN MURPHY, RENWICK THOMPSON, PETER HOOPER, RUIXIA CHEN, and INSPECSTAR, LLC, a California limited liability company,<br><br>Defendants. | Case No. C 09-01922 RMW<br><br>**STIPULATED PERMANENT INJUNCTION AND [1XXXXXXX] ORDER** |

    Plaintiff KLA-Tencor Corporation ("KT") filed an *ex parte* motion for temporary restraining order and order to show cause on May 4, 2009. This Court on May 4, 2009, at 6:30 p.m., issued its order granting a restraining order, allowing for expedited discovery and also granting KT's request to secure certain electronic evidence (hereinafter "TRO"). The TRO required the defendants to show cause on May 14, 2009, why a preliminary injunction should not be entered against them. The parties thereafter stipulated to an extension of the TRO and continuance of the hearing to May 22, 2009. The Court on June 5, 2009, issued its Preliminary Injunction Against All Defendants.

    KT and Defendant Renwick Thompson ("Mr. Thompson") have entered into a confidential agreement to resolve the claims asserted in this action and, pursuant to that

1  Agreement (the "Settlement Agreement"), have agreed to the terms of this Stipulated Permanent
2  Injunction. This Order supersedes the terms of the Preliminary Injunction against all Defendants
3  as that order pertains to Mr. Thompson. The Court hereby orders as follows:
4      1.     For purposes of this Stipulated Injunction:
5      (a)     "KT Protected Materials or Information" shall mean all KT trade secret or
6  confidential materials and information, including but not limited to KT product architecture
7  documents, including schematics and other drawings; KT fabrication and production documents;
8  KT financial information; KT service manuals, procedures and checklists; KT system test
9  documentation and procedures; KT software and software passwords; KT customer information
10 and records, including contracts between KT and its customers; KT tool warranties; KT tool
11 service and maintenance history files and information; KT pricing information for its products
12 and services; KT records specifying which KT tools have been sold to which customers and
13 associated records reflecting tool installation, repair and maintenance, and/or KT employee
14 training documents, information and online course materials; KT tools used in the installation,
15 maintenance and upgrading of KT systems; and KT documentation and information regarding
16 parts for its systems; information, technical data and know-how relating to KT products and
17 prototypes, KT business and product plans, KT manufacturing processes, KT research and
18 development programs, KT product specifications and designs, KT algorithms, KT computer
19 hardware configurations, KT test data; KT strategic plans; KT vendors, including terms of
20 agreements with vendors; KT employment records, and employee performance and evaluation
21 information; materials and things provided to third parties by KT pursuant to contracts limiting
22 their further distribution or dissemination without KT's permission; and information given to KT
23 by other companies pursuant to confidentiality agreements, all of the above whether in electronic,
24 hard-copy, or other form;
25     (b)     "Trade secret" shall have the meaning provided in California Civil Code
26 Section 3426.1(d) and relevant case law; and
27     (c)     "Confidential" shall include trade secret materials and information, as well
28 as the following: materials marked by KT as CONFIDENTIAL; private information about or

obtained from employees or contractors, or information that otherwise implicates privacy rights; non-public KT materials and information; information given to KT by individuals or other companies pursuant to confidentiality agreements; privileged information; materials and information provided under circumstances showing that KT intended them only for limited distribution or disclosure; KT materials and information which, if disclosed, could potentially be prejudicial to KT, its customers or its investors, or harm KT's competitive position.

2. In order to protect KT's trade secrets and consistent with the Settlement Agreement, Mr. Thompson, together with anyone acting on his behalf in any capacity, shall not engage in, commit or perform, directly or indirectly, any of the following acts:

(a) Acquiring, maintaining, disclosing, using or transferring any KT Protected Materials or Information by (i) making any copies of such information, whether electronically or by any other means; (ii) communicating such information to any third party, excluding counsel representing the parties in this litigation; (iii) transferring such information to any other storage media, computer, server, facility, or other tangible or intangible thing where such information might be stored, except as provided by the parties' Settlement Agreement; (iv) transferring such information to any location, including any location out of the country, whether by electronic means or any other means, except as provided by the parties' Settlement Agreement; (v) selling or licensing such information to any third party; (vi) providing any product or service to any third party that incorporates or requires use of such information; (vii) offering to provide to any third party any product or service that incorporates or requires use of such information; (viii) using such information for research or development, or for any other commercial purposes; or (ix) any other means;

(b) Contacting, soliciting or hiring any current or former employee of KT for the purpose of obtaining, directly or indirectly, any KT Protected Materials or Information; and

(c) Working on or with KT equipment or software, in any capacity, or providing training to anyone regarding KT equipment or software, except with the advance written permission of KT, since the parties agree that such activities would require the unauthorized use of KT trade secrets;

1              (d)     Contacting or soliciting KT customers, or any other person or entity that
2   owns, leases or otherwise possesses any KT product, to offer, promote or in any way provide,
3   directly or indirectly, services for any KT product to be performed by a KT-trained employee or
4   former employee, since the parties agree that such services would require the unauthorized use of
5   KT's trade secrets.

6          3.      If he has not already done so before issuance of the Order, then by no later than
7   seven calendar days after issuance of this Order, Mr. Thompson shall take the following steps to
8   preserve evidence: (a) Mr. Thompson shall give to KT any materials, things, documents, files and
9   records, in whatever form, that are the property of KT or that contain any KT trade secret,
10  confidential or other proprietary material or information; (b) Mr. Thompson shall provide to KT
11  the email address and password for every email account that he has used from August 1, 2008, to
12  *Nov. 30*, 2009 (the "Effective Date" of the parties' Settlement Agreement), so that KT or a
13  computer expert designated by KT may create an electronic copy of the complete contents of such
14  email accounts, and (c) Mr. Thompson shall provide to KT or a computer expert designated by
15  KT for copying all electronic storage media not previously copied pursuant to the TRO and that
16  contains any information or materials that relate to KT in any way or that are relevant to the
17  claims in this Litigation.

18         4.      Consistent with the terms of the Settlement Agreement, within seven calendar days
19  of the Court's issuance of this Order, Mr. Thompson shall take all steps necessary to ensure that
20  he no longer has in his possession, custody or control any documents, writings, things or
21  information of any kind that belong to KT, were obtained from KT without permission, or that
22  constitute, refer to, reflect, concern, or were derived from any KT Protected Materials and
23  Information, whether in electronic, hard-copy, or other form.  Mr. Thompson shall comply with
24  this provision either by providing the documents, writings, things or information of any kind to
25  KT or, in the case of electronic data, by deleting or destroying the data in his possession, custody
26  or control, so long as copies previously were obtained for preservation by KT or a computer
27  expert designated by KT for preservation.

28         5.      The restrictions in this Order shall not apply to information that Mr. Thompson

can document (i) was independently developed without unauthorized use of KT trade secret, confidential or proprietary information or materials; (ii) was publicly disclosed by KT; (iii) was lawfully disclosed by a third party having no obligation of confidentiality, or (iv) otherwise entered the public domain through no improper action or inaction by Mr. Thompson (or any affiliate, agent, consultant or employee of his).

6. Pursuant to the TRO, the Computer Investigator selected by KT is currently in possession of copies of Electronic Storage Devices obtained from Mr. Thompson. If KT requests in writing, with a copy to Mr. Thompson's counsel of record, the Computer Investigator shall provide such copies to KT, consistent with the terms of the parties' Settlement Agreement.

7. This Court shall retain ongoing jurisdiction with respect to enforcement of this Stipulated Injunction and the parties' Settlement Agreement, the terms of which are incorporated by reference.

IT IS SO STIPULATED.

KLA-Tencor Corporation

By: _____
Name: BRIAN Martin
Title: Sr. VP and General Counsel
Date: 11-30-09

Renwick Thompson

_____
Date: 11/23/09

IT IS SO ORDERED.

Dated: 12/23, 2009

*Ronald M. Whyte*
The Honorable Judge Ronald M. Whyte
Judge of the United States District Court,
Northern District of California